UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| STEVEN OVIATT, | No. ED CV 11-978-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 1, 2011, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 18, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 27, 2012, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on May 23, 1959. [Administrative Record ("AR") at 52-53.] He obtained his G.E.D. (general educational development) certificate and has completed two years of college. [AR at 82, 90.] Plaintiff has past relevant work experience as, among other things, a carpet salesman, an aircraft mechanic, and a sheet metal technician. [AR at 77, 86-87, 95-102.]

On November 4, 2004, plaintiff protectively filed his application for Disability Insurance Benefits ("DIB"), alleging that he has been unable to work since December 3, 2003, due to depression, hearing loss, chest, left shoulder, and arm pain, as well as back, stomach, ear, and left hand problems. [AR at 54, 59, 61, 75-91.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 52-66.] A hearing was held on January 16, 2007, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 570-83.] A supplemental hearing was held on May 31, 2007, at which time plaintiff appeared with counsel and again testified on his own behalf. [AR at 584-613.] On June 7, 2007, the ALJ determined that plaintiff was not disabled. [AR at 14-21.] On October 2, 2007, the Appeals Council denied plaintiff's request for review. [AR at 6-9.] On November 6, 2007, plaintiff filed a complaint in this Court in Case No. ED CV 07-1396-PLA. [See AR at 662-73.] On December 4, 2008, the Court entered judgment for plaintiff and remanded the case back to the Commissioner for further proceedings. [AR at 661-73.]

On July 5, 2007, plaintiff filed a subsequent application for Disability Insurance Benefits and protectively filed an application for Supplemental Security Income payments, based on which plaintiff was found disabled as of June 7, 2007, by the state agency. [See AR at 676.] On January 9, 2009, the Appeals Council found that this "favorable determination by the state agency ... invades the period previously adjudicated by the [ALJ]," adopted the state agency's allowance for the period beginning with June 8, 2007, and remanded the case involving plaintiff's 2004 application to the ALJ to determine plaintiff's disability from December 3, 2003, his alleged disability onset date, to June 7, 2007, the date the state agency found plaintiff disabled for the purpose of his 2007 applications. [See AR at 676-77, 745.]

On remand, the ALJ held another hearing on December 16, 2009, and on May 24, 2010, again found plaintiff not disabled. [AR at 634-48, 1162-90.] On June 21, 2010, plaintiff filed written exceptions to the ALJ's decision. [See AR at 745.] On September 24, 2010, the Appeals Council remanded the case to a second ALJ. [See AR at 745-47.] On March 31, 2011, a hearing was held before the second ALJ, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 1191-1218.] Two medical experts and a vocational expert ("VE") also testified. [AR at 1198-1217.] On April 15, 2011, the second ALJ determined that plaintiff was not disabled during the relevant period. [AR at 617-28.] This action followed.

### III.

### **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

/
/
/
/

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the

sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity during the period from his alleged onset date of December 3, 2003, until June 8, 2007, the date the Social Security Administration determined that he was disabled. [AR at 619.][1] At step two, the ALJ concluded that plaintiff has the severe impairments of mild to moderate (level I-II) obesity and various related problems; bilateral hearing loss treated with hearing aids and implants; status post right shoulder arthroscopy surgery after June 2007; status post left total hip replacement for degenerative disease after June 2007; possible carpal tunnel syndrome; chronic pain blamed on fibromyalgia syndrome; and major depressive disorder. [AR at 620.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 623.] The ALJ further found that through June 7, 2007, plaintiff had, and never lost for any significant period of time, the residual functional capacity ("RFC")[2] to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[3] "except stand or walk two out of eight hours in a workday with the use of [a] cane as needed[;] sit eight out of eight hours with a stand and stretch break for a couple of minutes every thirty minutes as well as normal breaks every two hours[;] lift or carry ten pounds frequently and twenty occasionally[;] occasionally stoop and bend[;] climb stairs, but not ladders[;] no balancing or work at heights[;] ... no forceful gripping, grasping, or twisting, frequent fine manipulation such as keyboarding and gross manipulation such as

---

[1]    The ALJ concluded that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2008. [AR at 619.]

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]    20 C.F.R. § 404.1567(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

opening drawers and carrying files[;] no work requiring acute hearing or where hearing is needed to avoid danger[;] no squatting, kneeling, crawling, running, or jumping[;] only simple repetitive tasks due [to] medication and emotional problems[;] no interaction with the general public[;] only non[-]intense interactions with coworkers and supervisors[;] no fast paced work like rapid assembly lines[;] and no hypervigilance." [AR at 624.] At step four, the ALJ concluded that plaintiff was not capable of performing any past relevant work. [AR at 626.] At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that through June 7, 2007, "there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed." [AR at 626-27.] Accordingly, the ALJ determined that plaintiff was not under a disability at any time from his alleged disability onset date of December 3, 2003, through June 7, 2007. [AR at 627.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that there is an inconsistency between the RFC determination made by the ALJ and his determination that plaintiff can perform the jobs of electronics worker and shoe packager. [Joint Stipulation ("JS") at 3.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

"[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles." Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). The Dictionary of Occupational Titles ("DOT") raises a presumption as to job classification requirements. See Johnson, 60 F.3d at 1435. In order for "the ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." Pinto, 249 F.3d at 847; see also Johnson, 60 F.3d at 1435 n.7 (ALJ's explanation was satisfactory where she "noted that the vocational expert described the characteristics and requirements of jobs in the local area"). Similarly, "[i]n order for an ALJ to accept vocational expert testimony that contradicts the

1 [DOT], the record must contain persuasive evidence to support the deviation." Pinto, 249 F.3d at
2 846 (internal citation and quotations omitted).

3     Moreover, "when a VE ... provides evidence about the requirements of a job or occupation,
4 the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE ...
5 evidence and the information provided in the DOT." Social Security Ruling[4] 00-4p; see also
6 Massachi v. Astrue, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007) (stating that SSR 00-4p explicitly
7 requires the ALJ to determine whether the VE's testimony deviates from the DOT and whether
8 there is a reasonable explanation for any deviation). SSR 00-4p further provides that "[i]f the VE's
9 ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation
10 for the apparent conflict." SSR 00-4p. An ALJ's failure to ask the VE about potential conflicts and
11 obtain a reasonable explanation for any conflicts is harmless error, however, where there is no
12 actual conflict or where the VE has "provided sufficient support for her conclusion so as to justify
13 any potential conflicts." Massachi, 486 F.3d at 1154 n.19.

14     Plaintiff argues that the ALJ erred in determining that he can do the job of a shoe packer
15 (DOT 920.687-166) because the ALJ found that plaintiff cannot perform "forceful gripping, grasping,
16 or twisting, frequent fine manipulation such as keyboarding and gross manipulation such as
17 opening drawers and carrying files" [AR at 624 (emphasis added)]. [JS at 4-5.] The Commissioner
18 defines a "frequent" job requirement as one that exists one-third to two-thirds of the time. See DOT
19 920.687-166. The job of shoe packer, however, requires "handling" (i.e., "seizing, holding,
20 grasping, turning or otherwise working primarily with the whole hand or hands" [SSR 85-15])
21 constantly, i.e., two-thirds or more of the time. DOT 920.687-166. Thus, the DOT description for
22 the job of shoe packer requires seizing, holding, grasping, turning, and/or other actions with the
23 hands that are in excess of the ALJ's RFC determination for plaintiff.[5] While the VE testified that

---

    [4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

    [5] This is true whether or not the ALJ found in the RFC determination that plaintiff is capable
(continued...)

7

there was no conflict between his testimony that an individual with this limitation, and all the other limitations the ALJ found that plaintiff has, can perform the job of shoe packer, the VE did not provide a reasonable explanation for the conflict. Thus, it was error for the ALJ to rely on the VE's testimony to conclude that plaintiff can perform this job. See Pinto, 249 F.3d at 846

Plaintiff also contends that the ALJ erred in determining that he can do the job of an electronics worker (DOT 726.687-010) because, while the ALJ found that plaintiff cannot perform jobs requiring hypervigilance, the job of electronics worker involves the use of power tools to perform various tasks, and also involves toxic caustic chemicals occasionally, i.e., up to one-third of the time. See DOT 726.687-010. Defendant argues that plaintiff's assertion that the job "might be required to use hypervigilance" is speculative as to the requirements of the job, and that such speculation "is insufficient to supersede" the VE's statement that his testimony was consistent with the DOT. [JS at 8.] However, the VE did not provide, and the ALJ did not elicit, any explanation for how an individual's preclusion from hypervigilance is consistent with the performance of a job requiring the use of power tools and occasionally involving toxic caustic chemicals. The ALJ did not point to any persuasive evidence to support this deviation, and thus he did not properly rely on the VE's testimony to find that plaintiff can perform this job.[6]

---

[5](...continued)
of fine and gross manipulation frequently, or only up to, but not including, frequently. See also infra, note 6.

[6] The parties also dispute the ALJ's finding as to the frequency with which plaintiff can perform fine manipulation and gross manipulation. [See JS at 4-7.] It appears to the Court that the ALJ included the following limitation in his RFC determination for plaintiff: "no ... frequent fine manipulation such as keyboarding and gross manipulation such as opening drawers and carrying files." [AR at 624.] While defendant disagrees with this interpretation [JS at 6-7], the ALJ's discussion of this limitation cites the October 2004 report of "a treating source in [plaintiff's] workers compensation case" (who found that plaintiff "should ... be precluded from power grasping with the left hand as well as from tasks involving repetitive gripping and grasping" [AR at 214]), and states that the report is consistent with "a capacity for at least light work involving *no frequent handling or fingering, no power gripping or grasping* ... ." [AR at 620 (emphasis added).] In addition, in the ALJ's hypothetical question to the VE, the answer to which the ALJ relied upon to find that plaintiff can perform the job of electronics worker [see AR at 626-27], he stated that the hypothetical person "could do frequent -- up to frequent fine manipulation, such as keyboard; gross manipulation, such as opening drawers and carrying files." [AR at 1215-16 (emphasis added).]
(continued...)

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly determine whether plaintiff can perform the jobs of shoe packer and electronics worker.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 29, 2012

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6](...continued)
Thus, while it appears that the ALJ found that plaintiff can perform up to frequent fine and gross manipulation, it is not entirely clear whether that finding includes the ability for frequent fine and gross manipulation.  If it does not, the Court notes that there would also be an apparent conflict between the ALJ's finding that plaintiff can perform the job of electronics worker and the DOT's description for the job, which includes a requirement for frequent handling.  See DOT 726.687-010.  On remand, the ALJ should clarify this issue.